UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NOE YONILDO AMBROCIO-PEREZ,<br><br>　　　　　　Defendant. | Criminal Case 25-30040-MGM |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION
(Dkt. No. 3)

I.　　Relevant Background

Defendant Noe Yonildo Ambrocio-Perez ("Defendant") has been indicted on one count of unlawful entry of a deported alien in violation of 8 U.S.C. § 1326(a) (Dkt. No. 16). The government alleges that Defendant is a Guatemalan national without legal status in the United States ("U.S.") who re-entered this country after a prior conviction for illegal re-entry after deportation. An affidavit in support of the complaint that initiated this prosecution alleges that, on or around August 31, 2002, officers of the U.S. Border Patrol ("USBP") encountered Defendant, who was around 15 years old at the time. He was found with others in a van in Vail, Colorado. All of those in the van admitted to being in the U.S. illegally. Defendant asked to be removed voluntarily to Mexico. As part of the processing, prior to removal, Defendant's fingerprints and a photograph were taken; he was then voluntarily removed to Mexico (Dkt. No. 1-2 at 3, ¶¶ 9-10).

On or around July 3, 2008, July 15, 2008, May 29, 2009, and June 2, 2009, Defendant was arrested in Springfield, MA on various charges ranging from domestic assault and battery to a compulsory insurance violation (Dkt. No. 1-2 at 3-4, ¶¶ 12-16). On or around July 26, 2010, he was taken into protective custody by the Springfield, MA police department when he was found intoxicated in public (Dkt. No. 1-2 at 4-5, ¶ 17). On these occasions, Defendant generally identified himself by the last name "Perez." He had a social security card in the name of Wilder Noel Perez (Dkt. No. 1-2 at 3-5, ¶ 12). On or around December 10, 2010, using the name Noe Perez, Defendant was convicted of petit larceny in Virgina (Dkt. No. 1-2 at 5, ¶ 18).

On or around October 13, 2012, Defendant was stopped by a Massachusetts State Trooper based on a report of erratic and dangerous driving. Defendant, who identified himself as Neri Perez and produced a Guatemalan identification card in that name, was arrested. On October 15, 2012, he was arraigned on the charges of operating under the influence, operating a motor vehicle with a license plate that was either obscured or not visible, operating a motor vehicle negligently, leaving the scene of property damage, and operating a motor vehicle with a suspended registration (Dkt. No. 1-2 at 5-6, ¶¶ 19-20). On October 16, 2012, an Immigration Enforcement Officer interviewed Defendant, who stated that he was a native and citizen of Guatemala, had entered the U.S. illegally and without authorization, and that he had encountered immigration officials in the U.S. in 2002 when he had been a juvenile. He admitted to using the alias "Rodolfo Lopez Velazquez" (Dkt. No. 1-2 at 6, ¶ 21). On October 25, 2012, a DHS Supervisory Officer issued a warrant for arrest of an alien for Defendant for entering the U.S. illegally and a Notice to Appear that informed Defendant that he was in the U.S. illegally and was required to appear before an immigration judge on a date to be determined (Dkt. No. 1-2 at 6-7, ¶ 22). On November 1, 2012, an Immigration Enforcement Officer served a notice to appear

on Defendant. Defendant executed a Notice of Rights and Request for Disposition form requesting a hearing before the Immigration Court to determine whether he could remain in the U.S. (Dkt. No. 1-2 at 7, ¶ 23).

On or around April 16, 2013, after Defendant was released from the custody of the Commonwealth of Massachusetts, an Immigration and Customs Enforcement ("ICE") officer arrested him (Dkt. No. 1-2 at 7, at ¶ 25). On June 12, 2013, ICE released Defendant and ordered him to report to DHS on July 11, 2013 (Dkt. No. 1-2 at 7, ¶ 26). On July 23, 2014, after Defendant failed to report to DHS in July 2013, an immigration judge ordered Defendant removed to Guatemala *in absentia* (Dkt. No. 1-2 at 7, ¶ 27). Five days later, the Department of Homeland Security (DHS) issued a Warrant of Removal/Deportation for Defendant (Dkt. No. 1-2 at 7, ¶ 28).

On April 27, 2015, Defendant was arrested in West Palm Beach, Fla. and charged with various traffic offenses. He presented a Guatemalan consular identification card in the name of Noe Perez (Dkt. No. 1-2 at 7-8, ¶ 29). He pled guilty, served a brief sentence, and was released from state custody in Florida (Dkt. No. 1-2 at 8, ¶ 30). Defendant was arrested by DHS in West Palm Beach on September 15, 2015. On or around September 30, 2015, ICE executed the Warrant of Removal/Deportation and removed Defendant to Guatemala (Dkt. No. 1-2 at 8, ¶¶ 31-32).

On or around March 4, 2017, Defendant pled guilty in Palm Beach County, Florida to operating a motor vehicle without a valid license and operating a motor vehicle with a child who was not suitably restrained. On or around December 1, 2018, Defendant was arrested and charged with driving while intoxicated, operating a motor vehicle with a suspended license, and leaving the scene of a crash with injury (Dkt. No. 1-2 at 9, ¶¶ 34-35). As a result of his

3

December 1, 2018 arrest, ICE learned that Defendant was in the U.S. and he was referred for prosecution to the office of U.S. Attorney for the Southern District of Florida (Dkt. No. 1-2 at 10, ¶ 38). Defendant admitted to ICE that he was a native and citizen of Guatemala, had previously been deported, and had not been authorized to re-enter the U.S. (Dkt. No. 1-2 at 10, ¶ 38).

Defendant was indicted on a single count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and detained pending trial. He pled guilty and was sentenced to time served and a year of supervised release and ordered to surrender to ICE for deportation. ICE ordered Defendant removed from the U.S. and he was arrested (Dkt. No. 1-2 at 11, ¶¶ 41-45). While in custody and prior to his removal, Defendant applied for asylum and withholding of removal (Dkt. No. 1-2 at 12, ¶ 48). He was interviewed by a DHS Asylum Officer, who concluded that Defendant was credible and had established a reasonable fear of torture if he was removed to Guatemala (Dkt. No. 1-2 at 12, ¶¶ 49-50). Defendant's asylum claim was referred to the Immigration Court. On May 28, 2019, an immigration judge denied Defendant's asylum claim, and, on or around June 11, 2019, ICE removed Defendant to Guatemala, warning him, in the process, that he was prohibited from re-entering the U.S. for a period of 20 years from the date of his departure and that he could not re-enter without the express consent of DHS (Dkt. No. 1-2 at 13, ¶¶ 51-53).

On May 15, 2025, Defendant was arrested in Springfield, MA for unlicensed operation of a motor vehicle, unregistered motor vehicle, and possessing an open container of alcohol in a motor vehicle. Defendant was released on his own recognizance. On May 28, 2025, ICE conducted an administrative arrest of Defendant for being in the United States without authorization after removal and detained him. Defendant had a MassHealth card in his possession in the name of Noe Perez. On May 29, 2025, ICE executed a Notice of

Intent/Decision to Reinstate Prior Order, and a Warrant of Removal/Deportation form authorizing DHS to take Defendant into custody and remove him from the U.S. (Dkt. No. 1-2 at 14-15, ¶¶ 55-59).

Following Defendant's May 2025 arrest, the government charged Defendant by complaint with illegal re-entry after deportation (Dkt. No. 1) and moved for pretrial detention pursuant to the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3142(f)(2)(A), on the ground that there is a serious risk that Defendant will flee (Dkt. No. 3). The government further contends that, if the court finds that Defendant poses a serious risk of flight, the court should find that there are no conditions of pretrial release that will reasonably assure the appearance of Defendant as required. *See* 18 U.S.C. §3142(g). Defendant opposes the Government's request for pretrial detention. The court held a hearing on the government's pretrial detention motion on July 17, 2025, and, at the conclusion of the hearing, gave the parties time to make additional submissions and took the government's motion under advisement (Dkt. No 10). Having carefully considered the parties' arguments, the court denies the government's motion for pretrial detention for the reasons set forth below.

In reaching this conclusion, the court acknowledges that the result of this ruling is that Defendant will almost certainly "remain in [ICE] custody subject to anticipated removal proceedings that are outside of the jurisdiction of this Court." *United States v. Abrego*, Case No. 3:25-cr-00115-1, 2025 WL 1727738, at *1 (M.D. Tenn. June 22, 2025).

II.     Legal Standard

The BRA "provides … a two-step process through which the government may seek pretrial detention. *See* 18 U.S.C. § 3142(f)-(g)." *United States v. Ibarra*, No. 2:24-mj-00385-KFW-1, 2025 WL 27474, at *2 (D. Me. Jan. 3, 2025). "First, the government must prove that

the case is eligible for pretrial detention because it concerns one of five categories of serious crimes, a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct justice." *Id.* (citing 18 U.S.C. § 3142(f)). Second, if the government proves a serious risk of flight, "it must then prove that there is 'no condition or combination of conditions' that 'will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community ….'" *Id.* (quoting 18 U.S.C. § 3142(e)); *see also United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 690 (D. Md. 2025) (same; collecting cases). "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." *United States v. Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing 18 U.S.C. § 3142(a)(3), (d)). Instead, the BRA "directs courts to consider a number of factors and make pretrial detention decisions as to removable aliens 'on a case-by-case basis.'" *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) (quoting *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009)); *see also Santos-Flores*, 794 F.3d at 1091; *Ibarra*, 2025 WL 27474, at *2.

Here, as in the *Ibarra* case, the government bases its motion for pretrial detention on its assertion that Defendant poses a serious risk of flight, *see* 18 U.S.C. § 3142(f)(2)(A), an assertion that the government must prove by a preponderance of the evidence. *See Ibarra*, 2025 WL 846435, at *2 (citing *United States v. Reynolds*, 609 F. Supp. 2d 108, 110 (D. Me. 2009)). The BRA does not offer guidance as to how a court should determine whether a defendant poses a "serious" risk of flight. Noting that "the adjective does not appear in other parts of the Bail Reform Act," *Mejias-Mejias*, 771 F. Supp. 3d at 691, courts have concluded that "Section 3142(f)(2)(A) requires more of the government than Section 3142(g)'s 'risk of nonappearance' showing that is more often addressed in detention hearings." *Id.; see also United States v.*

6

*Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (reasoning that the government must show that there is a "great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision"). Factors courts have identified for the purpose of this inquiry include, in a non-exhaustive list, incentive to flee, ability to flee, prior noncompliance with court orders, including prior failures to appear, ties to the jurisdiction, uses of aliases, potential punishment, length of residence, employment history, and substance abuse. *Mejias-Mejias*, 771 F. Supp. 3d at 692-94; *Figueroa-Alvarez*, 681 F. Supp. at 1142-45.

A majority of the courts that have considered the issue have held that "the fact that ICE may involuntarily remove a defendant does not establish their eligibility for pretrial detention as a serious risk under section 3142(f)(2)(A)." *Ibarra*, 2025 WL 27474, at *3 (citing *Ailon-Ailon*, 875 at 1337); *see also, e.g., United States v. Lopez*, No. 23-CR-10269-AK, 2023 WL 8039318, at *2 (D. Mass. Nov. 20, 2023) ("I am persuaded that the BRA does not authorize detention based on a risk that Defendant will not appear for reasons beyond his control."). "Nevertheless, considering a defendant's immigration status – including the prospect of ICE detention and removal – and how that status may affect their risk of flight and nonappearance is consistent with the individualized assessment required by the Bail Reform Act." *Ibarra*, 2025 WL 27474, at *3; *see also Lopez*, 2023 WL 8039318, at *4 n.3 ("The court may, of course, consider a defendant's immigration status in determining whether a defendant might flee. For defendants who face a virtual certainty of deportation following a substantial prison sentence, there is an obvious motivation to flee to their countries of origin rather than wait to serve a sentence in the United States and then be deported. Such facts speak to the likelihood that a defendant will flee intentionally and to the conditions that might mitigate such a risk.").

III.    Analysis

In the *Ibarra* case, the court found that the defendant was eligible for detention because the government had proved that he posed a serious risk of flight. *Ibarra*, 2025 WL 27474, at *3. The *Ibarra* court went on to deny the government's detention motion on the ground that there were conditions of release that could reasonably assure the defendant's appearance. *Id.* at *4. With all due respect, it appears to this court that there is an inevitable tension between a finding that a defendant poses a serious risk of flight and that there are, nonetheless, conditions that can reasonably assure his future appearances in court notwithstanding an ICE removal order or detainer that is likely to result in his immediate deportation on release. The conditions of release on which the *Ibarra* court relied to conclude that pretrial detention was not warranted are unlikely ever to become operative. For this reason and based on a review of the (sparse) evidence in this case and the decisions cited herein, I conclude that the government has not shown a serious risk that Defendant will flee such that the government is entitled to have the court order pretrial detention in the custody of the U.S. Marshal. *See* 18 U.S.C. § 3142(f).

Weighing relevant considerations based on the parties' competing contentions, some factors in Defendant's history suggest that, were he released pending trial, there is a serious risk that he would flee, while other factors tend to show that he is less of a serious risk of flight than the government contends. According to the Pretrial Services Report ("PSR"), Defendant's most recent residence in Springfield has lasted for about two years. He has a cousin, with whom he could reside were he released pending trial, and a son living in Springfield (PSR at 1-2). He reported working in the community for the past two years, although his employment history is unverified and he could not remember the name of the company for which he most recently worked (PSR at 2). Defendant's history of (unauthorized) residence in this country shows that

he was in Springfield, MA in 2008-2010 and either through 2012 or again in 2012.  It is a reasonable inference, based on the history in the affidavit submitted in support of the complaint and the PSR that Defendant has some genuine ties to this area.  *See Ibarra*, 2025 WL 27474 at *5 ("While the defendant's ties to this jurisdiction and the United States are not especially strong, he does enjoy stable housing and family support in [Springfield], which offsets the impact of his current inability to legally generate income.").  While he has family ties to a significant other and their two children, along with his parents and most of his siblings, in Guatemala, he credibly asserted fear about residing in his country of origin, reducing the likelihood that he would voluntarily flee to Guatemala (PSR at 1).  *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1139-40 (discussing and rejecting the argument that unauthorized foreign nationals are more likely to flee than defendants who are United States citizens or lawful residents).  Overall, this factor appears neutral as to the risk of flight.

      With one exception noted by the government (and that was not a failure to comply with a judicial directive), "[a]bsent are indicia of prior noncompliance or avoidance of criminal proceedings or judicial supervision.  *Mejias*-Mejias, 771 F. Supp. 3d at 693.  Defendant has a history of arrests and prosecutions in state court.  So far as appears from the record, he has appeared as required, resolved most charges, and served time when required to do so (PSR at 2-4).  While the government relies on an open case in Florida, that case appears to correspond to the period when Defendant was in federal custody and unable to appear on pending state court charges (Dkt. No. 1-2 at 10-13, ¶¶ 36-53; Dkt. No. 5 at 8; PSR at 4).  Defendant, however, failed to appear for immigration proceedings after DHS released him on his own recognizance in 2013 (Dkt. No. 1-2 at 7, ¶¶ 26-27).  He also a history of using aliases and identification documents with names other than his own and it appears that he has not been forthcoming about his status

9

and identity and circumstances when interacting with state law enforcement authorities. His history of arrests in different jurisdictions suggests an ability to travel within the U.S. despite his unauthorized status. On balance, these facts tend, in the government's favor, to provide some support for the assertion that there is a serious risk of volitional flight from this jurisdiction.

As to a potential sentence providing a motivation to flee, the government calculates Defendant's guideline exposure at 6-12 months with acceptance of responsibility (Dkt. No. 5 at 5). There is no minimum mandatory sentence. In the *Abrego* case, the court held that, where the sentences imposed for the crime with which the defendant was charged "ranged from time served or probation up to 64 months, with an average sentence of 12 months," the potential sentence was not "so extraordinary as compel finding that this case involves a serious risk of flight for purposes of § 3142(f)(2)(A)." *Abrego*, 2025 WL 1727738, at *16 (citing *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441 (M.D. Tenn. May 27, 2021)). Indeed, one court has held that a potential sentence of 8-12 months of imprisonment was "a factor that weighs heavily in favor of release." *United States v. Pavon-Andino*, Criminal Case No. 25-mj-00022-TPO, 2025 WL 446143, at *3 (D. Colo. Feb. 10, 2025).

There is "[n]o information available to the Court [that] suggests [Defendant] has means to flee," *Mejias-Mejias*, 771 F. Supp. 3d at 693. Defendant reported no assets or income to the Probation Department (PSR at 2). "Other than the basic fact that the defendant is alleged to be a foreign national, and thus … has connections to his country of birth, no evidence or proffer demonstrates an ability to flee." *Mejias-Mejias*, 771 F. Supp. 3d at 693; *see also Pavon-Andino*, 2025 WL 446143, at *3 (finding that the ability to flee factor was neutral where the government provided no evidence that the defendant has access to money to travel, fraudulent travel

documents, or specific ties to individuals outside the country to who could facilitate international travel).

The factors bearing on serious risk of flight are close to equipoise in this case. In the court's view, in these circumstances, the tiebreaker is that Defendant has virtually no prospect of avoiding the undisputed ICE Warrant of Removal that applies to him. The court "declines to abandon the individualized assessment mandated by the Bail Reform Act and does not find that an ICE hold on the person will always preclude a detention hearing under § 3142(f)(2)(A)." *Abrego*, 2025 WL 1727738, at *17. Nonetheless, what is clear in this case is that there is no prospect that, if the court declines to order pretrial detention for Defendant, he will be released and able to flee the jurisdiction. Defendant tried and failed to persuade an immigration judge to authorize asylum based on a risk of torture. He was previously removed from the U.S. following a conviction for illegal re-entry after deportation, resulting in a prohibition on re-entry for 20 years from the date of his departure. In response to the ICE Warrant of Removal, Defendant executed an Acknowledgment and Response indicating that he did not wish to make a statement contesting the determination (Dkt. No. 1-2 at 15, ¶ 60).

> In this particular case, the Court finds that the undisputed ICE detainer obviates any serious risk of flight because there is no suggestion that, if [Defendant] is released, the action taken by the government will be anything other than detaining him in ICE custody pending further removal proceedings. In a case similar to this, a . . . court in Tennessee held that when there is undisputedly an ICE hold against a defendant, the government cannot satisfy its threshold burden under § 3142(f)(2)(A) to show that there is a serious risk the defendant will flee because "[a]s long as [a defendant] remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of his flight is admittedly nonexistent."

*Id.*, at *18 (third and fourth alterations in original) (quoting *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716, 718 (E.D. Tenn. 2019)). "[T]he risk that Defendant will be deported and thus involuntarily be made absent from court does not constitute a serious risk of flight as that

11

term is used in the BRA." *Lopez*, 2023 WL 8039318, at *4.  It follows that the government may not seek detention in this case.  *See Mendoza-Balleza*, 420 F. Supp. 3d at 718.

In accordance with the provisions of the BRA, the court will enter an order providing that Defendant is to be released on his personal recognizance, subject only to the conditions that he not commit a new federal, state, or local crime while on pretrial release and that he cooperate in the collection of a DNA sample if required to do so by law.  18 U.S.C. §3142(b).  A form of release is attached hereto as Exhibit 1.

IV.    Conclusion

For the foregoing reasons, the government's motion for pretrial detention (Dkt. No. 3) is denied.

It is so ordered.

Date:   August 7, 2025                                     Katherine A. Robertson
                                                           KATHERINE A. ROBERTSON
                                                           U.S. MAGISTRATE JUDGE

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br>NOE YONILDO AMBROCIO-PEREZ<br>*Defendant* | )<br>)<br>) Case No. 25-cr-30040 (MGM)<br>)<br>) |

**ORDER SETTING CONDITIONS OF RELEASE**

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  ~~The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number~~.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

  The defendant must appear at: _____
                                                                        *Place*

  on _____
               *Date and Time*

  If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

 Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

 While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

 It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

 If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

 A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

 I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _____                                    _____
                             *Judicial Officer's Signature*

                       Katherine A. Robertson, U.S. Magistrate Judge
                             *Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL